UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:

GARY HUNTER                              )
        Plaintiff,                       )
                                         )
v.                                       )
                                         )
NCL Corporation LTD D/B/A                )
NORWEGIAN CRUISE LINE                    )
                                         )
        Defendant.                       **)**
_____/

## COMPLAINT

Plaintiff, GARY HUNTER ("HUNTER" or "Plaintiff"), hereby sues Defendant, NCL

CORPORATION LTD D/B/A NORWEGIAN CRUISE LINE ("Defendant") and alleges as

follows:

## NATURE OF ACTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §1331 and 1343 for

   plaintiff's claims arising under the Americans with Disabilities Act ("ADA") 42 U.S.C. §§

   12181, et seq., Declaratory Judgment Act, 28 U.S.C.§ 2201.  Further this Court has original

   jurisdiction of admiralty cases pursuant to 28 U.S.C §1333.

2. Gary Hunter, at all times material to this Complaint, was and is a resident of Jacksonville,

   Florida, and a "qualified individual with a disability" under the Americans with Disabilities

   Act. At all material times, the Plaintiffs were qualified to participate in and receive the benefits

   of NCL's programs, services, and activities. Thus, he is protected under *42 U.S.C. § 12181et*

   *seq.*

1

3.  At all times material to this Complaint, Defendant NCL Corporation LTD D/B/A Norwegian Cruise Line is a Florida corporation engaged in the business of operating commercial cruise ships around the world, headquartered in Miami-Dade County, Florida, and licensed to do business in Florida.

4.  Defendant's unlawful conduct was committed within the jurisdiction of the Jacksonville Division of the United States District Court for the Middle District of Florida.

5.  Hunter has performed all conditions precedent necessary to the maintenance of this action under the ADA.

## FACTUAL BACKGROUND

6.  At all times relevant to this action Galloway (a) suffered from one or more physical impairments which substantially limits one or more major life activities, (b) has a record of being disabled, and/or (c) was perceived by Defendant's as substantially limited in one or more major life activities.

7.  Specifically, Mr. Hunter became disabled on March 11th, 1987.  Mr. Hunter was injured in the line of duty, while working for the Jacksonville Sheriff's Office.  While working for the Jacksonville Sheriff's Office Mr. Hunter sustained injuries to his spine, in which his L3, L5 and S1 vertebrae were damaged.  This caused chronic pain, and mobility issues.

8.  At some point as a result of his injuries Mr. Hunter lost complete control of his bladder and bowel and needed to have immediate surgery.

9.  On or about May 20th, 2002, Mr. Hunter had a L5 Laminectomy to restore some control of his bladder and bowel function.  Mr. Hunter lost feeling in his right foot, immediately after the surgery, and has since Lost all feeling in his left foot.  As a result, Mr. Hunter is

confined to a scooter, and is not capable of walking unassisted for more than a few feet at a time.

10. Mr. Hunter has a history of taking cruises, and in the past has not had any issues with any companies at the ports of call that the cruise ship docks at.

11. On or about July 22nd, 2019, until July 29th, 2018 Plaintiff, Gary Hunter took a trip on the Norwegian Pride of America.

12. Mr. Hunter paid approximately $16,000 for this cruise, for him, and his family.  The room was specifically marked as a handicap room. The purpose of the trip was recreational, and the high price tag was to ensure Mr. Hunter, and his family enjoyed their vacation in luxury. As a part of this particular package, Mr. Hunter and his family received a butler for the duration of their stay with on the Pride of America.

13. The butler would provide a number of services for Mr. Hunter and his family that would not be available to the average passenger on the Pride of America.

14. The butler that Mr. Hunter paid for was keenly aware of Mr. and Mrs. Hunters physical limitations and disabilities.

15. The Pride of America stopped in several places, one of which was in Kuai, Hawaii.

16. On or about July 16th, and 17th, Four days into the trip on the Pride of America, the ship docked in the Maui, Hawaii Port of Call.  While docked in Maui, Mr. Hunter rented a car to explore the island.

17. Upon returning to the port, Mr. Hunter provided his disability decal to the Norwegian Staff at the Port of Maui.  He was informed that of all the disabled passengers on the ship he was the only one that brought his disability decal sticker, and as a result he would be allowed to park his vehicle inside the port of Maui.

18. Mr. Hunter asked the Norwegian staff, and the Port of Maui staff if this decal was good at all ports in Hawaii, and both Norwegian and the Port officials stated that yes, "they followed the ADA"

19. On or about July 19th or 20th, 2018, the Pride of America docked in the Port of Maui, on the island of Maui, in Hawaii.  Upon arrival at the Port in Maui the Hunters rented a car for them to use during the two days they were going to be docked in Maui.  As previously discussed, Mr. Hunter's mobility is severely limited to the point where he requires a motorized scooter to get around and is totally immobile.  Knowing the severity of Mr. Hunter's disability, Ms. Hunter went ahead of Mr. Hunter to go get the car rental.

20. The port in Maui that the Pride of America docked at has an outer and inner parking lot.  The outer parking lot is several blocks away from where the ship docks.  The inner parking lot on July 19th, 2018 was not being used in any capacity. The plan was to have Mrs. Hunter get the car and bring into the port, and park the car in the inner part of the port so that Mr. Hunter could take his scooter from the ship, down to the inner parking lot, get in the car that Ms. Hunter had brought to the inner parking lot, and then have the butler take Mr. Hunter's scooter back to the ship, and the Hunter's returned later in the day.

21. After returning with the vehicle Ms. Hunter was advised by Norwegian staff and the port authority that Ms. Hunter could drop someone off at the port, but that she could not park the vehicle at the port.  Ms. Hunter pointed to the vast open parking spaces available for parking, and inquired as to why she was not able to park her vehicle in any of these spots, and she was informed that the parking spots, inside the interior gates, near the ship, were for port employees, and special dignitaries.  Ms. Hunter specifically asked a Norwegian employee at the Pride of America why there wasn't any disability parking available and

that employee shockingly, and brazenly stated that the port does not follow the ADA, but rather follows special local rules.

22. Ms. Hunter called Mr. Hunter on the Pride of America and informed him that they would not let her park on the port. She informed Mr. Hunter that he would go to the local McDonalds and wait for her to get an answer from someone.

23. Upon receiving this information, Mr. Hunter called Guest Services, informed them of the situation, and asked them to make an accommodation for him since he was disabled. The individual from Guest Services that Mr. Hunter spoke to said that there was nothing that he could do, and then transferred Mr. Hunter to the Pride of America's security team who also refused to help Mr. Hunter.

24. After refusing to help Mr. Hunter, the ship security team transferred him to a supervisor of the Guest Services Department. This supervisor informed Mr. Hunter that he had spoken to Ron at the Port of Maui, and that they had determined that the Pride of America, nor the Port had to follow the ADA.

25. As a result of Ms. Hunter not being able to bring the vehicle in the inner parking lot, close to the ship, Mr. Hunter was prevented from being able to leave the ship, due to his disability. Inexplicably, Norwegian suggested that he could ride his scooter several blocks to the outer parking structure and leave his scooter on the side of the road since it would not fit in the car rented by Ms. Hunter.

26. Norwegian is required to comply with the Americans with Disabilities aspect in all respects. Part of compliance is providing stopping at Ports of Call that are compliant with the ADA, and if required provide customers reasonable accommodations for their

disabilities so that customers with disabilities can receive the full use and enjoyment of Norwegians services.

27. Norwegian failed to provide Hunter with a reasonable accommodation on his trip on the Pride of America when it stopped in Maui at its port of call, failing to provide Mr. Hunter with an opportunity to disembark the ship along with the rest of the guests in a manner that reasonably accommodated his disability.

28. Norwegian failed to modify NCL failed to make reasonable modifications in policies, practices, and procedures, when such modifications were necessary to ensure Defendant's services, facilities, privileges, advantages, or accommodations were available to the Plaintiffs in the most integrated setting possible.

29. Hunter has been damaged by Defendant's illegal conduct and, as a result has had to retain the services of undersigned counsel and has agreed to pay said counsel a reasonable attorney's fee.

### COUNT I – FAILURE TO PROVIDE A REASONABLE ACCOMMONDATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiffs re-allege Paragraphs 1 through 29 as though fully set forth herein.

30. Norwegian discriminated against Hunter on the basis of his disability, depriving him of the full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations in the Defendant's places of public accommodation. Accordingly, Defendant's actions and omissions violated *42 U.S.C. § 12182(a)* and *42 U.S.C. § 12182(b)(1)(A)(I)*.

31. Norwegian failed to make reasonable modifications in policies, practices, and procedures, when such modifications were necessary to ensure Defendant's services, facilities,

privileges, advantages, or accommodations were available to the Plaintiffs in the most integrated setting possible.

32. Additionally, Norwegian excluded or otherwise denied equal goods, services, facilities, privileges, advantages, accommodations or other opportunities to Plaintiff because of their known association with a person with disability, in violation of *42 U.S.C. § 12182(b)(1)(E)*.

33. Norwegian's unlawful conduct and/or failures to act violated, and continue to violate, Plaintiffs' federal statutory rights, under Title III of the ADA, to be free from discrimination on the basis of disability, "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation..

34. Accordingly, Plaintiffs were harmed as a direct result of Norwegian's actions, omissions, practices, policies, and procedures, described above, which violated the ADA.

**WHEREFORE**, the Plaintiff, Gary Hunter, respectfully requests that the Court, award him all compensatory damages, issue a permanent injunction enjoining the Defendant from continuing its discriminatory practices, order the Defendants to alter the subject practices as appropriate to comply with the ADA, and award Plaintiff his attorney's fees, costs, and litigation expenses incurred in this action, plus whatever relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**POSTILLION LAW GROUP, LLC**

By:    **/s/ Christopher J. Kinnaman, Esquire**
Christopher J. Kinnaman, Esquire
Florida Bar No.:0114609
Chris@Postillionlaw.com
12724 Gran Bay Parkway West, Suite 410
Jacksonville, Florida 32258
Telephone: (904) 615-6621
Facsimile (888) 399-6710
Counsel for Plaintiff